**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

HEATHER LOPEZ,

        Plaintiff,

vs.

WHIRLPOOL CORPORATION,

        Defendant.

No. 18-CV-22-LRR

**ORDER**

---

### *TABLE OF CONTENTS*

I.     *INTRODUCTION.* ...................................................................2

II.    *RELEVANT PROCEDURAL HISTORY*....................................2

III.   *SUBJECT MATTER JURISDICTION*.......................................2

IV.   *SUMMARY JUDGMENT STANDARD*.....................................3

V.    *RELEVANT FACTUAL BACKGROUND*...................................4

    *A.   Parties*...........................................................................4
    *B.   Overview of the Dispute*................................................4

VI.   *ANALYSIS*...........................................................................8

    *A.   Sexual Harassment*.......................................................8
        *1.   Parties' arguments*..............................................8
        *2.   Applicable law*...................................................9
        *3.   Application*.......................................................10
            *a.   The fourth element of the prima facie case*...................10
            *b.   The fifth element of the prima facie case*.....................15
            *c.   Constructive discharge*.............................................17
    *B.   Retaliation*.................................................................18
        *1.   Parties' arguments*............................................18
        *2.   Applicable law*.................................................19
        *3.   Application*.......................................................19

VII.  *CONCLUSION*....................................................................21

# I. INTRODUCTION

The matter before the court is Defendant Whirlpool Corporation's ("Whirlpool") "Motion for Summary Judgment" ("Motion") (docket no. 32).

# II. RELEVANT PROCEDURAL HISTORY

On December 20, 2017, Plaintiff Heather Lopez filed a "Petition at Law and Jury Demand" ("Petition") (docket no. 5) in the Iowa District Court for Linn County. In the Petition, Lopez alleges discrimination (Count I) and retaliation (Count II) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Iowa Civil Rights Act ("ICRA"), Iowa Code section 216.6. *See generally* Petition ¶¶ 20-26, 30-35. On February 8, 2018, Whirlpool filed a Notice of Removal (docket no. 1), bringing the case before the court. On March 8, 2018, Whirlpool filed an Answer and Affirmative Defenses (docket no. 13).

On March 25, 2019, Whirlpool filed the Motion. On April 22, 2019, Lopez filed a Resistance ("Lopez's Resistance") (docket no. 38). On April 29, 2019, Whirlpool filed a Reply (docket no. 39). Neither party has requested oral argument, and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

# III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over Lopez's claim arising under Title VII. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over Lopez's claim arising under the ICRA because it is so related to the claim within the court's original jurisdiction that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . .").

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Hilde v. City of Eveleth*, 777 F.3d 998, 1003 (8th Cir. 2015) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1157 (8th Cir. 2016) (quoting *Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833, 837-38 (8th Cir. 2011)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion

for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (third alteration in original) (quoting *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010). "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving parties, and affording them all reasonable inferences, the uncontested material facts are as follows.

### A. Parties

Lopez is a resident of Cedar Rapids, Linn County, Iowa. *See* Petition ¶ 1. Whirlpool is a Delaware corporation with its principal place of business in Benton Harbor, Michigan. *See* "Statement of Undisputed Facts in Support of Defendant Whirlpool Corporation's Motion for Summary Judgment" ("Whirlpool SUF") (docket no. 32-2) ¶ 2.

### B. Overview of the Dispute

In March 2015, Lopez was hired as a Plant Utility Assembler at Whirlpool's facility in Amana, Iowa. *Id*. ¶¶ 4, 6. Lopez was a member of Local Lodge No. 1526 of the International Association of Machinists and Aerospace Workers, AFL-CIO. *Id*. ¶ 37. After three months of working at Whirlpool, Lopez bid into the Built-In Refrigeration ("BIR") line. *Id*. ¶ 9. Lopez's job duties varied from day to day because a Plant Utility Assembler could be asked to work at any position on the line that needed help on any given day. *Id*. ¶ 15; *see also id*. ¶ 24 ("On a daily basis, on the BIR line, Plant Utility Assemblers were distributed where their labor was needed."). Depending on the time

4

period, Lopez's supervisor, Sheri Gralund, Brian Penning, a Training Team Leader, an unidentified acting Team Leader and "maybe" others determined the labor distribution on the BIR line. *Id*. ¶¶ 25, 56.

On March 5, 2015, Lopez signed Whirlpool's Anti-Harassment/Discrimination Policy and Policy on Workplace Violence. *Id*. ¶ 27. At her new hire orientation, Lopez was trained on these policies. *Id*. ¶ 29. Under the policies, an employee who encounters harassment, discrimination and/or violence is required to promptly report such problems to a supervisor, manager or the Human Resources ("HR") department. *Id*. ¶ 33.

While Lopez worked on the BIR line, Penning was a Training Team Leader, whose duties included assisting Team Leads with various issues on the BIR line. *Id*. ¶ 56. Toward the end of Lopez's tenure at Whirlpool, Penning handled some of Gralund's supervisory duties, including distributing labor, dealing with issues on the BIR line and directing Team Leads. *Id*. ¶ 59. However, Penning had no authority to hire, fire, conduct performance evaluations, promote, demote, discipline, coach employees, recommend decisions, approve vacation time or conduct any other supervisory duties. *Id*. ¶ 62.

According to Lopez, the only individual who allegedly harassed her was Penning. *Id*. ¶ 71. Gralund did not witness Penning harass Lopez in any way. *Id*. ¶ 72. According to Lopez, in 2015, about one month after starting on the BIR line, Penning put his hand on her shoulder, violating her space. *Id*. ¶ 74. Lopez did not complain to her supervisor, Gralund or HR about this incident. *Id*. ¶ 79.

Another incident involving Penning occurred when Lopez got a metal sliver in her finger while working on the BIR line. *Id*. ¶ 88. According to Lopez, Penning did not send her to the nurse. Instead, Penning indicated that he could:

> take care of it and had me go over to his area. I was like I can go to the nurse, it's fine, I'm cool with that. Because I did not want to be anywhere near his area. He was like we don't have enough people to cover, blah, blah, blah. He's like I can do it.

> He took me back into the rework area and pulled the sliver out
> and then was holding my hand with both of his hands, holding
> me close, and was blowing on my finger calling me "baby."

Appendix of Exhibits in Support of Whirlpool's Motion for Summary Judgment ("Whirlpool Appendix") (docket no. 32-3) at 26 (Lopez Deposition at 98:4-13); Statement of Additional Facts that Preclude Entry of Summary Judgment ("Lopez's SAF") (docket no. 38-2) ¶ 10. Lopez did not report this incident to HR, Gralund or her Union representatives. Whirlpool SUF ¶ 95.

On August 11, 2016, Penning asked Lopez to work a "QA" position on the BIR line. *Id*. ¶ 97. While working at the "QA" position, Lopez told the acting Team Lead, Stephy Crawford, that she was unable to do the job because she had not been trained on it and she was not fast enough to do it. *Id*. ¶ 100. Crawford helped Lopez and checked in with her a couple of times, but Lopez continued to have difficulty performing the job. *Id*. ¶¶ 101-102. Crawford summoned Penning and Lopez explained to Penning that she was not fast enough to do the job. *Id*. ¶¶ 102-103. Penning told Lopez that he would help her catch up and helped her for a short period of time. *Id*. ¶ 103. After Penning left, Lopez continued to have difficulty performing the job and Crawford summoned Penning a second time. *Id*. ¶ 104. Lopez refused to do the job and asked to see a union representative and HR. *Id*. Two union representatives came to the BIR line. *Id*. ¶¶ 105-108. Eventually, Penning took Lopez to see HR. *Id*. ¶ 109.

At the HR office, Penning and Lopez encountered Gralund, who indicated that she would address Lopez's concerns. *Id*. ¶ 110-11. Lopez told Gralund that she was placed in a job on the BIR line that she was unqualified to perform. *Id*. ¶ 113. Gralund told Lopez that she was moving to another line and encouraged Lopez to bid into the new line. *Id*. ¶ 114. Gralund took Lopez back to the BIR line and then allowed her to leave work early because it was the end of the week and nearing the end of the work day. *Id*. ¶ 115.

After speaking with Lopez, Gralund saw Susan Schoenfelder, an HR employee, and told Schoenfelder about the meeting with Lopez. *Id*. ¶ 121. Other than Schoenfelder, Gralund did not tell any other Whirlpool employee about her meeting with Lopez. *Id*. ¶ 123.

On August 16, 2016, Lopez was working on the BIR line and requested a brace from two Team Leads and one line technician. *Id*. ¶ 130. Lopez did not ask Penning for the brace. *Id*. ¶ 132. Lopez went to the nurse and was given a brace. *Id*. ¶ 133.

On August 17, 2016, Penning directed Lopez to work a "stand up" position on the BIR line. *Id*. ¶ 137. Lopez did not object to working the "stand up" position. *Id*. ¶ 138. Team Leader Ali Wullner asked Penning to talk to Lopez about wearing personal protective equipment ("PPE"), which Lopez refused to wear. *Id*. ¶ 140. Penning went to Lopez's area and told her that wearing the PPE, arm guards in this instance, was required. *Id*. ¶ 141. Lopez responded that she was going to HR. *Id*. ¶ 148.

At HR, Lopez met with Schoenfelder and a union representative. *Id*. ¶ 151. Lopez filed a written complaint addressing incidents on August 11, 16, and 17, 2016. *See* Whirlpool Appendix (docket no. 32-4) at 60. Lopez's written complaint stated:

> Last Thursday[, August 11, 2016,] I [was] put in a position where I was unqualified to do [the job]. I asked for an audience with the union [representative] and HR. I was brought to HR and told to wait. Instead of an HR rep[resentative] or a union rep[resentative] I was directed to an office alone with my supervisor [(Gralund)]. I was taken back to the line by my supervisor. This morning (8/17/16) I was put in a new position by the acting supervisor [(Penning)]. There is no access to ice, no fan, and no moving air. I was overheated to say the least and when I was asked to put on arm guards I asked for a fan or a way to cool. . . . Yesterday[, August 16, 2016,] I was on a job I was injured on, [and] I requested a brace to avoid re-injury. I aske[d] Danny (Team Lead), Vicky (Team Lead) [and] Steve ([Technician]). I was told they would get one and [six] hours later I was still without the brace and in so much pain. I had to demand to see the nurse.

*Id*. at 60-61.  Schoenfelder told Lopez that Whirlpool would investigate her complaints. Whirlpool SUF ¶ 154.

According to Lopez, on August 22, 2016, while on the BIR line and in the presence of three other co-workers, Penning stood approximately twenty feet away from her and stared at her for about one hour.  *Id*. ¶ 173.  During a work break, Lopez used a phone located in the facility to call HR and report the staring incident.  *Id*. ¶ 175; Whirlpool Appendix (docket no. 32-3) at 39 (Lopez Deposition at 152:2-153:1).  After the work break, Lopez returned to her position on the BIR line and did not see Penning the remainder of the day.  Whirlpool SUF ¶ 179.  Similarly, on August 23, 2016, according to Lopez, Penning, again, came into the BIR line area and spoke with a co-worker and then stared at Lopez for forty-five minutes to one hour with a "pissy face."  *Id*. ¶ 180. Lopez did not complain to HR or a union representative about the second staring incident. *Id*. ¶ 183.

On August 24, 2016, Lopez did not go to work.  *Id*. ¶ 186.  Lopez left a voicemail message with Whirlpool stating that she was resigning.  *Id*. ¶ 187.  At her deposition, Lopez testified that she doubted she had mentioned Penning or sexual harassment in her resignation voicemail.  *Id*. ¶ 188; Whirlpool Appendix (docket no. 32-2) at 46 (Lopez Deposition at 178:10-24).

## VI.  ANALYSIS

### A.  Sexual Harassment

### 1.    Parties' arguments

Whirlpool argues that it is entitled to summary judgment on Lopez's sexual harassment claim for three reasons.  First, Whirlpool argues that Lopez was not subjected to unwelcome sexual harassment.  *See generally* Whirlpool's Memorandum in Support of Its Motion for Summary Judgment ("Whirlpool's Brief") (docket no. 32-1) at 13-14. Second, Whirlpool argues that the alleged harassment was not so severe or pervasive that

it altered Lopez's employment. *See generally id*. at 14-16. Third, Whirlpool argues that, to the extent Lopez complained about any incidents, it took proper remedial steps. *See generally id*. at 16-18.

Lopez argues that summary judgment is inappropriate because (1) Penning's conduct was unwelcome; (2) Penning's conduct was based on Lopez's sex; (3) Penning's sexually harassing conduct was severe and pervasive; and (4) Whirlpool was aware of Penning's sexually harassing conduct and failed to take proper remedial action. *See generally* Lopez's Resistance at 10-15. Additionally, Lopez argues that, because she was sexually harassed and Whirlpool took no remedial action, her resignation constituted constructive discharge. *See generally id*. at 15-16.

### 2. Applicable law

In order to establish a prima facie case of sexual harassment, a plaintiff must show that: "(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). "Actionable harassment must have been both objectively and subjectively offensive affecting a term of employment." *Nichols v. Tri-National Logistics, Inc.*, 809 F.3d 981, 985 (8th Cir. 2016). "[T]o succeed on a hostile work environment claim under Title VII, a plaintiff must show 'that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimination because of sex."'" *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005) (alterations omitted) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "Hostile work environment harassment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment.'" *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 823 (8th Cir. 2017) (alteration in original) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013)). "The standard for demonstrating a hostile work environment under Title VII is 'demanding,' and 'does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace.'" *Id.* (quoting *Jackman*, 728 F.3d at 806). "Because the elements of a hostile work environment claim under [the] ICRA 'mirror' the elements under the federal law, [courts] address the federal and state claims together." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 n.6 (8th Cir. 2015) (citations omitted).

### 3.  *Application*

Assuming, arguendo, that Lopez is a member of a protected class, she was subject to alleged unwelcome harassment, and the alleged harassment was based on sex, Lopez's sexual harassment claim fails because she cannot establish the fourth or fifth element of the prima facie case. Lopez is also unable to establish that she was constructively discharged based on the alleged sexual harassment.

### a.  *The fourth element of the prima facie case*

In order to meet her burden on the fourth element of the prima facie case, Lopez "must demonstrate the unwelcome harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment by creating an objectively hostile or abusive environment." *LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1101 (8th Cir. 2005) (quoting *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003)). "Sexual harassment 'standards are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant.'" *LeGrand*, 326 F.3d at 993 (quoting *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003)).

The fourth element of the *prima facie* case also requires the work environment to be both objectively and subjectively offensive. *Sandoval v. Am. Bldg. Maint. Indus., Inc.*,

578 F.3d 787, 801 (8th Cir. 2009). "The harassment must be 'severe or pervasive enough to create an objectively hostile or abusive work environment' and the victim must subjectively believe her working conditions have been altered." *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993)); *see also Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 845 (8th Cir. 2006) ("Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (quoting *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998))). "An objectively offensive environment is one that a reasonable person would find hostile or abusive[.]" *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009). A plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Sutherland v. Missouri Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009) (quoting *Harris*, 510 U.S. at 21); *see also Nitsche*, 446 F.3d at 846 ("Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'") (quoting *Tuggle*, 348 F.3d at 720)). Thus, the plaintiff "must clear a high threshold to demonstrate actionable harm, for 'complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' obtain no remedy." *Nitsche*, 446 F.3d at 845-46 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

"There is no bright line between sexual harassment and merely unpleasant conduct. . . ." *Sandoval*, 578 F.3d at 801 (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997)). Therefore, courts view the totality of the circumstances in determining whether a hostile work environment exists. *Id.*; *see also Sutherland*, 580 F.3d at 751 ("The totality of the circumstances is examined to determine if the environment was sufficiently hostile."). Factors to consider are: (1) the frequency of the discriminatory

conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating; and (4) whether the conduct was so severe or pervasive that it unreasonably interfered with the employee's work performance. *Anderson*, 579 F.3d at 862. Courts should also bear in mind that "Title VII does not prohibit all verbal or physical harassment in the workplace and is not a general civility code for the American workplace." *Id*. at 862-63 (quoting *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008)).

The high threshold for demonstrating actionable harm under the fourth element of the prima facie case of sexual harassment is illustrated by the Eighth Circuit Court of Appeals's decision in *Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir. 2002). In *Duncan*, the Eighth Circuit reversed a jury's award of damages for the plaintiff on her sexual harassment claim. *Id*. at 930-31. Two weeks after the plaintiff was hired, her supervisor propositioned her to have a relationship with him. *Id*. at 931. The plaintiff alleged that the supervisor's manner toward her became hostile after she declined his advance. *Id*. The plaintiff testified to numerous incidents of her supervisor's inappropriate behavior:

> [The supervisor] directed [the plaintiff] to create a training document for him on his computer because it was the only computer with the necessary software. The screen saver that [the supervisor] had selected to use on his computer was a picture of a naked woman. [The plaintiff] testified to four or five occasions when [her supervisor] would unnecessarily touch her hand when she handed him the telephone. In addition, [the supervisor] had a planter in his office that was shaped like a slouched man wearing a sombrero. The planter had a hole in the front of the man's pants that allowed for a cactus to protrude. . . . [The supervisor] also kept a child's pacifier that was shaped like a penis in his office that he occasionally showed to his coworkers and specifically to [the plaintiff] on two occasions.
>
> In 1995, [the plaintiff] requested a pay increase and told [her supervisor] that she would like to be considered for an

illustrator's position. [The supervisor] said that she would
have to prove her artistic ability by drawing his planter. . . .

Additionally in 1995, [the supervisor] . . . created a
'recruitment' poster that was posted on a bulletin board in the
high-tech area. The poster portrayed [the plaintiff] as the
president and CEO of the Man Hater's Club of America. . . .

On May 5, 1997, [the supervisor] asked [the plaintiff] to type
a draft of the beliefs of the 'He-Men Women Hater's Club.'
The beliefs included the following:

- Constitutional Amendment, the 19th, giving women the
  right to vote should be repealed. Real He-Men indulge
  in a lifestyle of cursing, using tools, handling guns,
  driving trucks, hunting, and of course, drinking
  beer. . . .
- Women are the cause of 99.9 per cent of stress in men.
- Sperm has a right to live.
- All great chiefs of the world are men.
- Prostitution should be legalized.

*Id.* at 931-32. The Eighth Circuit determined that the plaintiff's alleged harassment was

not so severe or pervasive as to alter a term, condition, or privilege of her employment.

*Id.* at 934. Specifically, the Eighth Circuit found that the evidence presented at the trial

showed that the plaintiff was upset and embarrassed by the posting of the derogatory

poster, and was disturbed by the supervisor's advances and inappropriate behavior, but she

failed to show that "these occurrences in the aggregate were so severe and extreme that

a reasonable person would find that the terms and conditions of [her] employment had been

altered." *Id.* The Eighth Circuit concluded that:

[The supervisor's] actions were boorish, chauvinistic, and
decidedly immature, but we cannot say they created an
objectively hostile work environment permeated with sexual
harassment. Construing the evidence in the light most
favorable to [the plaintiff], she presented evidence of four
categories of harassing conduct based on her sex: a single

> request for a relationship which was not repeated when she
> rebuffed it, four or five isolated incidents of [the supervisor]
> briefly touching her hand, a request to draw a planter, and
> teasing in the form of a poster and beliefs for an imaginary
> club. It is apparent that these incidents made [the plaintiff]
> uncomfortable, but they do not meet the standard necessary for
> actionable sexual harassment.

*Id*. at 935.

Considering the record in the light most favorable to Lopez, the court finds that Lopez's allegations of being assigned to a position on the BIR line that she felt unqualified to perform, not receiving an arm brace that she requested for over six hours, and being required to wear arm guards in a warm environment on the BIR line, *see* Whirlpool Appendix (docket no. 32-4) at 60-61, Penning placing his hand on Lopez's shoulder in or around April 2015, *see* Whirlpool SUF ¶ 74, Penning removing a sliver from Lopez's finger, blowing on her finger and calling her "baby," *see* Whirlpool Appendix (docket no. 32-3) at 26 (Lopez Deposition at 98:4-13), Lopez's vague deposition testimony that Penning touched her "tons" of times, *see id*. at 48 (Lopez Deposition at 188-89), and Lopez's vague deposition testimony of many instances where Penning invaded her personal space, *see id*. at 28 (Lopez Deposition at 107-08), 46 (Lopez Deposition at 181), do not rise to the level of actionable hostile work environment sexual harassment as contemplated by *Duncan* and its progeny. *See Duncan*, 300 F.3d at 935; *see also McMiller v. Metro*, 738 F.3d 185, 188 (8th Cir. 2013) (finding that a male supervisor who kissed a female plaintiff on two occasions, placed his arms around the plaintiff or attempted to do so three times and requested that the plaintiff remove an ingrown hair from the supervisor's chin did not rise to the level of severe or pervasive conduct which altered a term, condition, or privilege of plaintiff's employment); *Anderson*, 579 F.3d at 863 (finding a manager's conduct of rubbing the plaintiff's shoulders and back, calling her "baby doll," insinuating that she could go farther in the company if she got along with him, and accusing her of not

wanting to be "one of my girls" to be not severe, pervasive, or demeaning enough to have altered a term, condition, or privilege of her employment); *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 551-52 (8th Cir. 2007) (finding that repeated comments about plaintiff's body by two co-workers, repeated requests for dates by two co-workers, and two incidents of touching (hair and pant leg) by a co-worker did not amount to severe or pervasive conduct which altered a term, condition, or privilege of plaintiff's employment); *LeGrand*, 394 F.3d 1098, 1100-03 (8th Cir. 2005) (finding that the unwelcome sexual advances of a priest serving on the board of a non-profit organization who employed the plaintiff, which consisted of the priest asking the plaintiff to watch pornographic movies with him and "jerk off" to relieve stress, suggesting a second time that watching pornographic movies with the him would advance the plaintiff's career in the non-profit organization, kissing the plaintiff, grabbing the plaintiff's buttocks, brushing the plaintiff's crotch area, and gripping the plaintiff's thigh under a table during a meeting at the non-profit organization were not so severe or pervasive as to "poison" the plaintiff's work environment); and *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 760 (8th Cir. 2003) (concluding the district court erred in finding a triable issue for the jury on the plaintiff's hostile work environment claim, where the harassing conduct consisted of belittling and sexist remarks on an almost daily basis).

Accordingly, because Lopez is unable to establish the fourth element of the prima facie case, the court will grant Whirlpool's motion for summary judgment on Lopez's sexual harassment claim.

### b.      *The fifth element of the prima facie case*

In order to meet her burden on the fith element of the prima facie case, Lopez must show that Whirlpool failed to respond "to [the] harassment with prompt remedial action calculated to end it[.]" *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 421 (8th Cir. 2010). In determining whether a plaintiff meets the burden on the fifth element of the

prima facie case, courts consider factors such as "the amount of time that elapsed between the notice and remedial action, the options available to the employer, . . . and whether or not the measures ended the harassment." *Id*. (quoting *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999)). "Employees often must 'tolerate some delay,' however, so that an employer can 'gauge the credibility of the complaint and the seriousness of the situation.'" *Alvarez*, 626 F.3d at 421 (quoting *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 988 (8th Cir. 1999)).

Here, Lopez filed a written complaint on August 17, 2016. In the written complaint, Lopez alleged that: (1) On August 11, 2016, she was assigned to a position on the BIR line that she felt unqualified to perform; (2) on August 16, 2016, she requested an arm brace to avoid injury, but she was not provided with an arm brace for over six hours; and (3) on August 17, 2016, she was ordered to wear arm guards in a warm area of the BIR line that lacked ice and fans and she became overheated. *See* Whirlpool Appendix (docket no. 32-4) at 60-61. The written complaint makes no allegation of sexual harassment by Penning. Further, Whirlpool told Lopez that it took her complaint seriously and would investigate it. However, seven days later (four working days), on August 24, 2016, Lopez resigned her employment at Whirlpool. Lopez resigned by leaving Whirlpool a voicemail. *See* Whirlpool SUF ¶ 187. According to her deposition testimony, Lopez stated that she doubted she had mentioned Penning or sexual harassment in her voicemail resignation. *Id*. ¶ 188; Whirlpool Appendix (docket no. 32-2) at 46 (Lopez Deposition at 178:10-24). Under these circumstances, the court finds that Lopez's resignation four working days after filing her written complaint, and lack of mentioning Penning or sexual harassment in her complaint or resignation did not afford Whirlpool the opportunity to take proper remedial action. *See Stuart v. General Motors Corp.*, 217 F.3d 621, 633 (8th Cir. 2000) (providing that a nine-day delay between notice of a harassment complaint and commencement of an investigation into the harassment complaint did not preclude

summary judgment for the employer).

Additionally, Lopez points to vague testimony in her deposition where she states that she told her supervisor that Penning was "creepy" and once asked her supervisor to tell Penning to stay away from her as evidence that Whirlpool was on notice of Penning's alleged harassment. *See* Lopez's Resistance at 14; Whirlpool Appendix (docket no. 32-3) at 26-28 (Lopez Deposition at 101, 105, 109). Similar to her written complaint, Lopez's vague statements in her deposition do not allege sexual harassment by Penning. The court finds such evidence inadequate to have placed Whirlpool on notice of sexual harassment by Penning. Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo*, 614 F.3d at 807. "Evidence, not contentions, avoids summary judgment." *Reasonover*, 447 F.3d at 578 (quoting *Mayer*, 318 F.3d at 809).

Accordingly, because Lopez is unable to establish the fifth element of the prima facie case, the court will grant Whirlpool's motion for summary judgment on Lopez's sexual harassment claim.

### c. *Constructive discharge*

In order to prove a claim of constructive discharge, Lopez must show that her "employer deliberately created intolerable working conditions with the intention of forcing her to quit." *Sanders v. Lee Cty. Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012) (quoting *Alvarez*, 626 F.3d at 418). In other words, "[i]f an employee quits because she reasonably believes there is no chance of fair treatment, there has been a constructive discharge." *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 617 (8th Cir. 2000) (quoting *Kimzey v. Wal-Mart Stores*, 107 F.3d 568, 574 (8th Cir. 1997)). In *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926 (8th Cir. 2000), the Eighth Circuit explained that:

> to prove that a constructive discharge occurred, the plaintiff must demonstrate that a reasonable person would find the working conditions intolerable. The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings; the question is whether

> working conditions were rendered so objectionable that a
> reasonable person would have deemed resignation the only
> plausible alternative.

*Id.* at 932. Evidence of the employer's intent may be proven "through direct evidence or through evidence that 'the employer . . . could have reasonably foreseen that the employee would [quit] as a result of its actions.'" *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1083 (8th Cir. 2010) (alteration in original) (quoting *Wright v. Rolette Cty.*, 417 F.3d 879, 886 (8th Cir. 2005)). The employee, however, is required to give her "employer a reasonable opportunity to resolve a problem before quitting." *Sanders*, 669 F.3d at 893.

The record does not support Lopez's constructive discharge claim. According to her deposition testimony, Lopez stated that she doubted she had mentioned Penning or sexual harassment in her resignation voicemail. *See* Whirlpool SUF ¶ 188; Whirlpool Appendix (docket no. 32-2) at 46 (Lopez Deposition at 178:10-24). Furthermore, the court finds that a reasonable person would not have found Lopez's working conditions intolerable, and would not have "deemed resignation the only plausible alternative." *Tatom*, 228 F.3d at 932. Moreover, given that Lopez resigned four work days after filing her written complaint with Whirlpool, Lopez did not give Whirlpool "a reasonable opportunity to resolve [the] problem before quitting." *Sanders*, 669 F.3d at 893. Accordingly, the court will grant Whirlpool's motion for summary judgment on Lopez's constructive discharge claim.

## B. Retaliation

### 1. Parties' arguments

Whirlpool argues that it is entitled to summary judgment on Lopez's retaliation claim because Lopez is unable to establish a prima facie case of retaliation. *See generally* Whirlpool's Brief at 23-25. Specifically, Whirlpool argues that Lopez cannot "establish any 'non-trivial' materially adverse actions she suffered; her complaints did not mention or indicate sex harassment and therefore are not protected conduct; and, she admits she

cannot prove [that the] . . . adverse actions [she alleges] were caused by her complaints[.]" *Id.* at 23. Lopez counters that she is able to establish a prima facie case of retaliation. *See generally* Lopez's Resistance at 16-21.

### 2.    *Applicable law*

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because [she] has opposed any [unlawful employment] practice . . . or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). In this way, Title VII prohibits retaliation for engaging in protected activity related to allegations of sexual harassment. "To establish a prima facie case of retaliation, a plaintiff must show that: '(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two.'" *DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016) (quoting *Fiero v. CGS Sys., Inc.*, 759 F.3d 874, 880 (8th Cir. 2014)). "Further, retaliation must be the 'but for' cause of the adverse employment action." *Jackman*, 728 F.3d at 804; *see also Blomker*, 831 F.3d at 1059 (noting that "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision" to take the adverse employment action (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015))).

"The ICRA similarly makes retaliatory action unlawful." *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1088 (8th Cir. 2015) (citing Iowa Code § 216.11(2)). The court shall analyze Lopez's ICRA retaliation claim using the same method as the federal retaliation claims. *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) ("This court analyzes ICRA retaliation claims under the 'same method as federal retaliation claims.'" (quoting *Smith v. Allen Health Sys.*, 302 F.3d 827, 836 (8th Cir. 2002)).

### 3.    *Application*

Lopez's retaliation claim fails because she is unable to establish a prima facie case

of retaliation. First, Lopez is unable to show that she engaged in statutorily protected conduct. Lopez did not mention sexual harassment by Penning or any other Whirlpool employee in her written complaint. *See* Whirlpool Appendix (docket no. 32-4) at 60-61. In her deposition, Lopez offered the following vague description of her encounter with HR regarding her complaints against Penning:

> Basically they're like what's going on. And I told them about everything about Brian [Penning], basically spilled by guts. After I said everything they told me to write down a summary of it just so they could have documentation, and I started writing this and then I was told to summarize it, not go into specific detail, blah, blah, blah, and then I think they asked me again about Brian [Penning] specifically after I was done with this.

Whirlpool Appendix (docket no. 32-3) at 37 (Lopez Deposition at 142:15-22). Again, neither Lopez's testimony itself or the written complaint mention any allegations of sexual harassment by Penning. Based on the foregoing, the court finds that Lopez has failed to establish the first element of the prima facie case. *See Anuforo*, 614 F.3d at 807 (providing that mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact"); *Reasonover*, 447 F.3d at 578 ("Evidence, not contentions, avoids summary judgment." (quoting *Mayer*, 318 F.3d at 809)).

Second, Lopez is unable to show that she suffered an adverse employment action. "To constitute an adverse employment action, the employer's decision must effect a material change in the terms or conditions of employment." *Hughes v. Stottlemyre*, 454 F.3d 791, 796 (8th Cir. 2006). In *Spears v. Missouri Dept. of Corr. & Human Res.*, 210 F.3d 850 (8th Cir. 2000), the Eighth Circuit Court elaborated on what constitutes an adverse employment action in the retaliation context. The Eighth Circuit explained:

> An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *See Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999). Termination, reduction in pay or benefits, and

> changes in employment that significantly affect an employee's future career prospects meet this standard, *see Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999), but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not, *see Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

*Id*. at 853. Here, Lopez did not experience termination or reduction in pay or benefits. Further, assigning Lopez to undesirable positions on the BIR line, allegedly unsuccessfully trying to stop her from talking to HR, two alleged incidents of Penning staring at her for up to an hour and one instance of having her talk to her supervisor instead of HR do not amount to "a material change in the terms or conditions of employment." *Hughes*, 454 F.3d at 796. Further, minor changes in working conditions that merely inconvenience an employee do not constitute adverse employment actions. *See Spears*, 210 F.3d at 853.

Accordingly, because Lopez is unable to establish a prima facie case of retaliation, the court will grant Whirlpool's summary judgment motion on Lopez's retaliation claim.

## VII. CONCLUSION

In light of the foregoing, Whirlpool's Motion for Summary Judgment (docket no. 32) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Whirlpool Corporation and against Plaintiff Heather Lopez. The Clerk of Court is **DIRECTED** to terminate all outstanding motions and to **CLOSE THIS CASE**. The Final Pretrial Conference scheduled for June 13, 2019 is **CANCELLED**.

**IT IS SO ORDERED.**

**DATED** this 28th day of May, 2019.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA