United States Court of Appeals

For the Eighth Circuit

_____

No. 19-2357
_____

Heather Lopez

*Plaintiff - Appellant*

v.

Whirlpool Corporation

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Northern District of Iowa – Cedar Rapids
_____

Submitted: September 22, 2020
Filed: March 4, 2021
_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

     Heather Lopez appeals the district court's[1] order granting summary judgment in favor of her former employer, Whirlpool Corporation, on her sex discrimination and retaliation claims. She also appeals a sanctions order. We affirm.

---

     [1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

# I. Background

From March 2015 to August 2016, Lopez worked for Whirlpool making refrigerators in Amana, Iowa.

In June 2015, Lopez joined the built-in-refrigeration ("BIR") line under the supervision of Sheri Gralund. Each day different people—including Gralund and Training Team Leader Brian Penning—assigned Lopez to fill in areas of the line which required labor. Whirlpool classified Penning as a "non-manager[.]" Lopez conceded that Penning was only her co-worker (not her supervisor).

Initially, Penning did not behave inappropriately toward Lopez. However, in July 2015, she saw him touch her co-worker, Stephanie Crawford. Lopez regarded that as "kind of creepy[.]" But it did not bother Crawford both because she had "known [Penning] since [she] was a little kid" and she "[didn't] think he'd be like that with [her]."

A month later, Penning turned his attention to Lopez.[2] He appeared behind her, "putting a hand on [her] shoulder and caressing [her] or talking quietly about something, just violating [her] space in general." She asked him to "back off a little[,]" told him "I'm not [Crawford], I don't like people in my personal space," and "mention[ed] to him [she] was married[.]" "So he stopped . . . for a while[,]" and "would just do it" to Crawford. Eventually, "it started up again, but occasionally, not like every single day[.]"

---

[2]At summary judgment, the parties' evidence presented competing narratives. For example, Lopez testified that a male co-worker harassed her and that she told her supervisor and a human resources employee about that harassment. But the co-worker's affidavit denied any wrongdoing. And affidavits from the supervisor and HR employee denied that Lopez told them about that wrongdoing. At this stage, however, we construe the facts in Lopez's favor. *See Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020).

-2-

Case 1:18-cv-00022-LRR-MAR Document 49 Filed 03/04/21 Page 2 of 13
Appellate Case: 19-2357   Page: 2   Date Filed: 03/04/2021 Entry ID: 5010796

In April of 2016, Lopez "started noticing [the harassment] more" and "it became problematic" after she won a Whirlpool weight-loss contest. She testified that "almost every time [she] came in contact with [Penning] there was some sort of touch involved on his end" often "[w]here he'd come up from behind" to touch her shoulder, arm, or back. Because she already "told him" not to touch her, "any touch after that was not okay."

Once, Penning's groin touched her when he stood behind her in a line. Another time, Lopez needed first aid, Penning kept her from going to the nurse, administered the aid himself, blew on her finger, and called her "baby." Lopez did not report either incident to HR, any supervisor, or her union.

However, according to Lopez, Gralund knew that she wanted Penning to stay away from her. Lopez also testified that she "[made] it clear to [Gralund] that on many occasions there had been physical interaction" from Penning. After one conversation, Gralund told Lopez that she would talk to Penning. Because "for a while . . . it seemed like . . . everything was fine[,]" Lopez assumed that Gralund spoke with Penning. Lopez also testified that she did not report every Penning incident because "[t]hat would have been redundant and probably irritated the hell out of [Gralund]."

In the summer of 2016, Whirlpool gave Gralund a new role on a different line and did not immediately replace her old role. During the transition, Penning "handled distributing labor and addressing issues on the BIR line, including directing line workers on their job duties."

On August 11, 2016, Lopez felt unqualified to perform a task Penning assigned to her. She demanded to see HR and union representatives. Penning told her it would be "insubordination if [she] refused to do a job" and denied her request. When Lopez stated "legally you can't deny me that," Penning "radioed somebody" who "told him, [']yeah, if she asks for HR, you get her to HR.[']" Penning "was not happy" but took her to HR.

-3-

Case 1:18-cv-00022-LRR-MAR   Document 49   Filed 03/04/21   Page 3 of 13
Appellate Case: 19-2357   Page: 3   Date Filed: 03/04/2021 Entry ID: 5010796

However, no one from HR or the union met with Lopez. Instead, Gralund met with her. In testifying about that meeting, Lopez described Gralund as acknowledging that Lopez "was already unnerve[ed] to . . . have [Penning] close by" and that she lacked the qualifications for that day's task. Gralund encouraged Lopez to bid for a spot on her new line. Lopez viewed that encouragement as an incentive to stop complaining about Penning. Afterward, Gralund told HR employee Sue Schoenfelder about the meeting, that Lopez "was a good worker," and the possibility of joining Gralund's line.

On August 16, 2016, Lopez's co-workers—but not Penning—ignored her request for a brace to avoid re-injuring her shoulder. On August 17, Penning told Lopez to wear personal protective equipment while she worked in a stuffy, hot area. But Lopez would not do so without a fan. When Penning refused to address the temperature, Lopez told him that she was going to HR even after he threatened termination.[3]

That same day, while meeting with Schoenfelder and a union representative, Lopez made her first written complaint. It noted that: (1) on August 11, when Lopez wanted to discuss feeling unqualified for that day's task, she did not receive a meeting with an HR or union representative; (2) on August 16, Lopez only received a brace after waiting six hours and demanding to see the nurse; and (3) on August 17, Penning directed Lopez to a task in hot working conditions without access to ice, a fan, or moving air. Schoenfelder told Lopez that Whirlpool would investigate her complaints.

Lopez conceded that the August 17 complaint failed to mention Penning's harassment, yet testified that she told Schoenfelder and the union representative "everything about [Penning], basically spilled [her] guts." She also testified that she

---

[3]Lopez acknowledged that Penning did not say that she would be fired if she resisted his advances. And while that "felt implied," she did not tie the implied threat to those advances.

-4-

Case 1:18-cv-00022-LRR-MAR   Document 49   Filed 03/04/21   Page 4 of 13
Appellate Case: 19-2357   Page: 4   Date Filed: 03/04/2021 Entry ID: 5010796

omitted the other details about Penning because Schoenfelder told her to write "a quick summary" about the meeting-prompting events of August 11, 16, and 17.

On August 22, 2016, Penning hovered close to Lopez's workspace and stared at her for an hour. Lopez called an unidentified HR employee to note "that [she] felt like [Penning] was retaliating" and that "he was angry[.]" She expressed discomfort and a desire to leave the BIR line, including by "tak[ing] any position they would give" her. The HR employee asked "are you sure you're not overreacting?" From that moment, Lopez "knew that [she] did not have anybody on [her] side."

The next day, when Penning stared at her again for forty-five minutes with a "pissy face," Lopez did not report his conduct. But after the second hovering day, Lopez resigned in a voicemail. She testified that she did not "feel safe there anymore, and [she] didn't want to work in a place where [she] felt like [she] had to worry all the time[.]" She "doubt[ed]" mentioning "Penning" or "sex harassment" in her voicemail.

After resigning, Lopez sued Whirlpool for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act and the Iowa Civil Rights Act ("ICRA").

During discovery, the parties had trouble scheduling Lopez's deposition. Without repeating the district court's thorough fact recitation, we note that Whirlpool spent time and money on multiple depositions that never occurred. Whirlpool noticed the first deposition for a Tuesday and its counsel travelled from Chicago to Cedar Rapids for a Tuesday-through-Thursday stay. On Tuesday morning, Lopez's counsel's cited snow in asking to reschedule for Thursday. On Wednesday afternoon, he asked to reschedule again because, although "[b]ased on prior conversations, [he] had assumed [his] client would be available" for Thursday, "she [w]as not available" on that date.

-5-

Case 1:18-cv-00022-LRR-MAR   Document 49   Filed 03/04/21   Page 5 of 13
Appellate Case: 19-2357   Page: 5   Date Filed: 03/04/2021 Entry ID: 5010796

Based on that incident and other delays, before discovery closed, Whirlpool moved to sanction Lopez's counsel and to extend certain deadlines. In support, Whirlpool invoked 28 U.S.C. § 1927 (allowing courts to hold attorneys liable for excessive costs) and the court's "inherent power" to sanction. The magistrate judge imposed a $2,000 sanction against Lopez's counsel and allowed Whirlpool to depose Lopez. The magistrate judge concluded that Lopez's counsel insufficiently explained why the deposition could not have occurred on Whirlpool's first three-day trip. Relying on Fed. R. Civ. P. 37(d)(3), the district court upheld the magistrate judge's order.

After deposing Lopez, Whirlpool moved for summary judgment on all counts. In granting that motion, the district court reasoned that Lopez could not prove a prima facie case on either sex discrimination or retaliation. Lopez appeals the sanctions and summary judgment orders.

## II. Discussion

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Lopez as the nonmoving party and granting all reasonable inferences in her favor. *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020). "[B]ecause [Lopez] presents no separate arguments under the ICRA, which was modeled after Title VII . . . , we address her state civil rights claims together with her Title VII claims." *Id.* We apply a deferential abuse-of-discretion review to a district court's "decision to impose a sanction, the nature of the sanction imposed, and the factual basis for the court's decision." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999).

### A. Hostile Work Environment

To recover on a claim for a hostile work environment based on co-worker harassment, a plaintiff must show that: "(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex;

-6-

Case 1:18-cv-00022-LRR-MAR   Document 49   Filed 03/04/21   Page 6 of 13
Appellate Case: 19-2357   Page: 6   Date Filed: 03/04/2021 Entry ID: 5010796

(4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016); *see also Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) ("If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions."). Like the district court, we assume that Lopez meets the first three elements.

### 1. Harassment Affecting Employment

To raise a triable fact on the fourth element, the claim-triggering conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment.[4] *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). "This is not, and by its nature cannot be, a mathematically precise test." *Id.* at 22. "But . . . whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Id.* at 23. Those circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* We have often noted that our precedent "sets a high bar" for "sufficiently severe or pervasive" conduct. *Paskert*, 950 F.3d at 538.

Lopez did not want Penning to touch her. He knew that because she asked him to stop, both directly and through Gralund. Yet, Penning touched Lopez almost every time he saw her in the months following. He touched her back, invaded her personal space, and blew on her finger while calling her "baby." And he glared at her for long periods. If true, Penning should "be embarrassed and ashamed for how [he] treated her." *Id.* at 539. Even as we condemn that conduct, we cannot view it as meeting the exacting standard that we must apply in deciding Whirlpool's

---

[4]While the fourth element involves both subjective and objective analyses, Whirlpool only disputes the latter. *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009).

-7-

Case 1:18-cv-00022-LRR-MAR   Document 49   Filed 03/04/21   Page 7 of 13
Appellate Case: 19-2357   Page: 7   Date Filed: 03/04/2021 Entry ID: 5010796

liability. *See*, *e.g., id.* at 538–39 (collecting cases); *see also LeGrand v. Area Res. for Cmty. & Hum. Servs.*, 394 F.3d 1098, 1100–03 (8th Cir. 2005) (three unwelcome sexual advances over nine months did not satisfy the fourth element because "none . . . was physically violent or overtly threatening" even when two instances involved overtly sexual touching).

Indeed, the evidence in this case fails is not as strong as evidence in our hostile-work-environment precedent involving frequent, unwelcome touching. *See, e.g., Eich v. Bd. of Regents for Cent. Mo. State Univ.*, 350 F.3d 752, 759–60 (8th Cir. 2003) (holding evidence was sufficient to show sexual harassment when co-worker repeatedly grazed employee's breasts; "frequently" touched her hair, shoulders, and spine; simulated sex acts near her; "constantly" directed sexual innuendos at her and other women; and when supervisor repeatedly rubbed her leg during meetings, pressed up against her when they spoke, and pushed his groin into her shoulder); *see also id.* at 759 n.1 (collecting cases).

### 2. Whirlpool's Negligence

Even if Lopez could meet the fourth element, she cannot meet the fifth. An employer "may be directly liable for its employees' actions that violate Title VII if the company knows or should have known of the conduct, unless it can show that it took immediate action and appropriate corrective action." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 419, 421 (8th Cir. 2010) (internal quotation marks and citation omitted). Lopez's evidence fails to raise a triable fact on what Whirlpool knew or should have known about Penning's conduct.

Lopez's own testimony prevents her from relying on Gralund's knowledge. Lopez admitted that Gralund seemingly addressed her complaints because "everything was fine" for some time. Even though we accept Lopez's August 11 recollection, she failed to present evidence that she mentioned ongoing touching during that meeting. Instead, she testified about feeling unqualified to execute a particular task. At most, Gralund knew that Lopez felt "unnerve[d]" around

-8-

Penning. Lopez has not pointed to precedent imposing liability for a complaint like that.

Besides Gralund, only Schoenfelder had both supervisory authority and knowledge about the harassment. Schoenfelder received the August 17 written complaint, which fails to mention touching. But even if Lopez "spilled [her] guts" to Schoenfelder about the touching, Whirlpool's liability does not automatically follow. That is true here because Lopez resigned four business days later, without giving Whirlpool a reasonable time to address her complaint. *Cf. id.* at 421 (twenty-one days was a reasonable time for employer to investigate complaint, formulate a remedy, and "effectively end[]" sexual harassment). Thus, Lopez cannot satisfy the fifth element.

### B. Constructive Discharge

Lopez did not raise a triable fact on constructive discharge, either. "An employee is constructively discharged when an employer deliberately renders the employee's working conditions intolerable and thus forces her to quit her job." *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 553 (8th Cir. 2007). "A constructive discharge arises only when a reasonable person would find her working conditions intolerable." *Id.* Lopez "fails to produce evidence suggesting [Whirlpool] intentionally created an intolerable work condition in an effort to cause her to resign." *Id.*

Additionally, "[a]n employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." *Id.* Lopez fails to show that she gave Whirlpool a reasonable chance to address the issues, especially because everyone agrees that she resigned four business days after telling HR about the problem.

-9-

Case 1:18-cv-00022-LRR-MAR Document 49 Filed 03/04/21 Page 9 of 13
Appellate Case: 19-2357 Page: 9 Date Filed: 03/04/2021 Entry ID: 5010796

## C. Retaliation

To establish a prima facie case of retaliation under 42 U.S.C. § 2000e–3(a), Lopez must show that "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016). She can satisfy the first element if she "oppos[ed] an act of discrimination made unlawful by Title VII ('the opposition clause'), or participat[ed] in an investigation under Title VII ('the participation clause')." *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002).

Lopez must show "an objectively reasonable belief that an actionable Title VII violation has occurred for [her] complaint to qualify as a protected activity." *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1064 (8th Cir. 2020). We use the applicable substantive law to analyze reasonableness. *Id.* at 1065. Under Title VII, a sex discrimination claim requires an adverse employment action. *See Jackman v. Fifth Jud. Dist. Dep't Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). Lopez can meet that showing if "a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *AuBuchon v. Geithner*, 743 F.3d 638, 642 (8th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 54, 67–68 (2006)). But that "action must be material, not trivial[.]" *Id.* at 644. Lopez "avoid[s] the triviality pitfall" if she shows that "the retaliation . . . produce[d] some injury or harm" but she did not make that showing here for two reasons. *Id.* (internal quotation marks omitted).

### 1. Opposition

First, the record refutes Lopez's effort to satisfy the opposition prong. She asserts that on August 11, "after [she] reasonably believed that she had been subject to harassment by Mr. Penning, [she] opposed discrimination by demanding . . . to

-10-

speak with a union representative and go to HR" and he "tried to block [her] from going." But the evidence shows that she complained about feeling unqualified for that assigned task. She did not tie that complaint to any discrimination, let alone sex discrimination. *See Hunt*, 282 F.3d at 1028–29 ("While [employee] complained that she was entitled to a pay increase and a change in job title, she did not attribute [the employer's] failure to give her a raise or a promotion to sex discrimination. Thus [she] was not engaged in a protected activity for the purposes of Title VII[.]").

### 2. Participation

Under the participation prong, Lopez points to her August 17 meeting when she "spilled [her] guts" about Penning after he threatened to get her fired. Although she felt that Penning retaliated against her by "trying to intimidate [her] or . . . make [her] life worse because [she] told on him[,]" including two staring incidents, she did not show harm or injury. Lopez undercuts any argument about harm or injury from a threatened termination when she treated it as an empty threat. Specifically, she doubted that he could fire her. She cites no evidence for us to conclude that a reasonable employee would have believed otherwise.

### D. Sanctions

Next, we analyze a challenge to the sanctions order. Lopez's counsel contends that order violated his Fifth Amendment Due Process rights and relied on factual errors.[5] Under Fed. R. Civ. P. 37(d)(1)(A)(i), "[t]he court . . . may, on motion, order sanctions if: . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition." In setting out possible sanctions, including some orders under subsection (b)(2)(A), subsection (d)(3) provides that "[i]nstead of or in

---

[5]We do not consider a separate challenge—that no order compelled discovery—because Lopez raised it for the first time on appeal. *See McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005) ("Absent exceptional circumstances we will not consider arguments raised for the first time on appeal.").

-11-

Case 1:18-cv-00022-LRR-MAR   Document 49   Filed 03/04/21   Page 11 of 13
Appellate Case: 19-2357   Page: 11   Date Filed: 03/04/2021 Entry ID: 5010796

addition to these sanctions, the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses . . . caused by the failure, *unless* the failure was substantially justified or other circumstances make an award . . . unjust." Fed. R. Civ. P. 37(d)(3) (emphases added).

In his first challenge, Lopez's counsel argues that he lacked notice or a chance to be heard because the district court's "sua sponte" basis for sanctions (Fed. R. Civ. P. 37(d)(3)) did not match the bases for Whirlpool's motion for those sanctions (28 U.S.C. § 1927 or the court's inherent power). Rather than challenge Rule 37(d)(3)'s applicability, he argues that he could have met one of its exceptions if he had known the court would apply that rule. But he had (and used) multiple chances to explain his client's conduct (e.g., in responding to Whirlpool's motion and seeking reconsideration). *See Chrysler*, 186 F.3d at 1023 ("Due process is satisfied if the sanctioned party has a real and full opportunity to explain its questionable conduct before sanctions are imposed."). That those explanations did not satisfy Rule 37(d)(3) does not mean a Due Process violation occurred.

Lopez's counsel also challenges the factual basis for sanctions, characterizing it as "demonstrably false[.]" That challenge lacks merit. The magistrate judge concluded that Lopez's counsel insufficiently explained why the deposition could not have occurred on Whirlpool's counsel's first three-day trip to Cedar Rapids. The district court concluded that the sanction "was not inappropriate based on the facts of the case." We agree.

Snow explained the Tuesday cancellation. But rather than explain why Wednesday did not work, Lopez's counsel tried to blame Whirlpool for skipping that day. The record shows that Lopez's counsel, and not Whirlpool, asked to reschedule for Thursday. Lopez's counsel also fails to explain the Thursday cancellation. Stating flatly that Lopez was "not available" on that date and that it "absolutely would not work for her" does not explain why it would not work. We thus cannot conclude that an erroneous view of the evidence influenced the sanctions

-12-

order. In turn, we can only conclude that the district court did not abuse its discretion in affirming that order.

The judgment of the district court is affirmed.

_____

-13-

Case 1:18-cv-00022-LRR-MAR   Document 49   Filed 03/04/21   Page 13 of 13
Appellate Case: 19-2357   Page: 13   Date Filed: 03/04/2021 Entry ID: 5010796